Ramona LEASE, Laurence J. Adams,
Esquire, and Adams and Zellner,
Plaintiffs,

v.

Gerald RUBACKY, M.D., Defendant.

No. CIV.A. 97–4280.

United States District Court,
E.D. Pennsylvania.

Dec. 29, 1997.

Laurence J. Adams, M.D., J.D., Lancaster,
PA, for Plaintiffs.

Paul S. Diamond, James L. Ray, Obermay-
er, Rebmann, Maxwell & Hippel, LLP, Phila-
delphia, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

Presently before this Court is Defendant,
Gerald Rubacky, M.D.'s, ("Defendant" or
"Rubacky"), Motion to Disqualify Laurence
J. Adams ("Adams") and Adams and Zell-
ner[1] from representing plaintiff Ramona

---

1. It is unclear whether the firm of Adams and Zellner still exists given Brian Zellner's deposi- tion testimony that the firm should have been dissolved. However, the firm, Adams and Zell-

Lease ("Lease"). For the following reasons, the Motion will be granted.

## BACKGROUND

The underlying case involves an alleged breach of an oral contract by defendant, Dr. Gerald Rubacky. Rubacky allegedly agreed to testify as an expert witness for plaintiff, Lease's, medical malpractice action against a Dr. Argires ("Argires"). In the medical malpractice action, Lease alleged that Argires negligently performed unnecessary emergency surgery that left her with an unstable spine, which requires further surgery, and a cracking sensation that goes into one leg.

Plaintiffs, Laurence Adams and his law firm, Adams and Zellner, represented Lease in the underlying medical malpractice action. Adams allegedly made an oral contract to retain defendant, Rubacky, to testify as an expert witness in that proceeding. Plaintiffs allege that Rubacky's breach of this oral contract forced plaintiff, Lease, to withdraw her claims against Argires. Therefore, plaintiff, Lease, is seeking compensation from Rubacky for the loss of recovery she may have received from Argires. Plaintiffs, Adams and Adams and Zellner, are pursuing this action against Rubacky to recover the costs of and lost earnings they would have recovered from the underlying suit of *Lease v. Argires.*

## DISCUSSION

### I. Disqualification

■ The court has the power to supervise the professional conduct of the attorneys that appear before it, including the power to disqualify counsel. *Kaiser v. Stewart,* 1997 WL 186329 (E.D.Pa.). However, given that disqualification operates to "deprive the opposing parties their counsel of choice," it is not favored. *Capriotty v. Bell,* 1991 WL 22134, *2 (E.D.Pa.); See also Kaiser,* 1997 WL 186329 at *2. In order to show that disqualification is proper, the "party seeking disqualification must 'clearly show[] that continued representation would be impermissi-

ble.'" *Kaiser,* 1997 WL 186329 at *2 (alteration in original)(quoting *Cohen v. Oasin,* 844 F.Supp. 1065, 1067 (E.D.Pa.1994)).

### II. The Conflict of Interest Rule

■ The local rules of this Court incorporate the Model Rules of Professional Conduct as adopted by the Supreme Court of Pennsylvania. *See* E.D. Pa. R. 83.6(IV)(B). Rule 1.7 of the Model Rules provides that an attorney may not represent two clients when representation of one would be "directly adverse" to or would "materially limit" representation of the other, unless the attorney "reasonably believes" that representation of the other would not be "adversely affected" and both clients consent to the representation. If the conflict is "so severe that no lawyer could 'reasonably believe' that representation of one will not adversely affect the representation of the other, representation of both cannot be allowed." *Capriotty,* 1991 WL 22134 at *2 (citing *Figueroa–Olmo v. Westinghouse Electric,* 616 F.Supp. 1445, 1451 (D.P.R.1985)). The rules allow representation if the lawyer has a reasonable belief that "he can fully serve two clients, despite a difference in interest between them." *Id.* at *3. However, this requires full consent of both parties.[2] *Id.* There are some conflicts that "may be so egregious that a client cannot agree to waive them." *Kaiser v. Stewart,* 1997 WL 186329, *3 (E.D.Pa.)(stating this may especially be true in the criminal context but can also exist in the civil context).

### III. Conflicts of Interest in the Instant Case

■ Presently, Laurence Adams represents Lease, himself, and his law firm in this breach of contract action against Dr. Gerald Rubacky. Defendant moves to disqualify Adams from joint representation under the conflict of interest rule. Defendant claims that the interests of Adams and Adams and Zellner are directly adverse to the interests

---

ner, to any extent it still exists, is subject to this Court's Order.

**2.** Plaintiff, Ramona Lease, submitted an affidavit attesting that Adams, in an effort to comply with

this Court's November 12, 1997 Order, informed her of the potential conflict of continuing representation and that she consented to continued representation.

of Ramona Lease given that Adams and Adams and Zellner stand directly liable to Lease for the failure of her underlying claim against Argires; the same claims from which Lease now seeks compensation from Rubacky. Defendant will assert at trial that Adams and Adams and Zellner alone are responsible for any injury Lease may have suffered due to their malpractice in failing to obtain an expert for trial after the alleged breach by Rubacky.

These potential latent claims Lease has against Adams and Adams and Zellner present directly adverse interests. *See Capriotty*, 1991 WL 22134 at *3. For example, Lease's theoretical settlement opportunities are adversely affected by joint representation. If Lease does not receive full, or even any, recovery from Rubacky, she can assert a claim against Adams and Adams and Zellner. However, the interests of Adams and Adams and Zellner are best protected by fully pursuing the litigation with Rubacky because if Lease receives full recovery from Rubacky, she will be less likely to assert her potential claims against them. Thus, in any potential settlement discussions with Rubacky, Adams and Adams and Zellner's interests would be directly adverse to Lease's.

■ Further, Adams and Adams and Zellner will not likely advise Lease to pursue her claims against them in an effort to recover for her injury. Thus, Lease's avenues of obtaining recovery are adversely affected by Adams and Adams and Zellner's representation of her. Although Lease submitted an affidavit consenting to continued representation, there is no indication that she has performed the necessary consultation with outside counsel or other equivalent research and thereby come to the conclusion that co-plaintiffs, Adams and Adams and Zellner, are not responsible for her lost potential recovery

from Argires.[3] *See Capriotty*, 1991 WL 22134 at * 4–5.

■ The existence of potential claims does not automatically disqualify the attorney. However, when the potential claims are such that their existence affects the adequacy of representation, then the interests are too adverse to allow joint representation. *Id.* at *5. This Court finds that Lease's potential claims against co-plaintiffs, Adams and Adams and Zellner, create directly adverse interests that affect the adequacy of representation. This Court further finds that it is unreasonable for Adams and Adams and Zellner to believe they can adequately represent themselves and Lease. Therefore, Adams [4] and Adams and Zellner are disqualified from representing Lease in this action.

## CONCLUSION

An appropriate Order follows.

## ORDER

AND NOW, this 29th day of December, 1997, upon consideration of Defendant's Motion to Disqualify Laurence J. Adams and Adams & Zellner, Plaintiff's response thereto, and Defendant's supplemental response, it is hereby ORDERED that, for the reasons set forth in the foregoing Memorandum, the Motion is GRANTED. It is further ORDERED that all pending motions, with the exception of the present motion, shall be STAYED for a period of 45 days to allow Plaintiff, Ramona Lease, to retain new counsel.

---

**3.** It is unclear whether plaintiff, Adams, even realizes that Lease could have a legal malpractice action against him as Adams demonstrated to the Court in a phone conference on December 15, 1997, that he had not considered that a viable claim.

**4.** Although it is unnecessary to fully discuss in this Memorandum, the Court would also disqualify Adams as trial counsel for Lease under Rule

3.7 since Adams will be a necessary witness at trial. Plaintiffs assert a breach of an oral contract claim in their complaint, and the record evidence indicates that Adams is the only person who can testify as to the terms of this contract as Adams is the only attorney in his firm who ever spoke directly to Rubacky. *See* (Deposition of Brian Zellner, 11/26/97 at 24–25 and Deposition of David Knauer, 11/26/97 at 10–11).